UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TAP ACQUISITION, INC., and EVAN KOSLOW, as Trustee of the Koslow Charitable Remainder Trust, | § § § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:14-CV-3601-B |
| | § | |
| VIANET GROUP PLC, f/k/a BRULINES GROUP PLC, and VIANET AMERICAS, INC., | § § § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Vianet Group PLC, f/k/a Brulines Group PLC and Vianet Americas, Inc.'s (collectively Vianet) Motion for Judgment on the Pleadings with regard to Plaintiffs Tap Acquisition, Inc. and Evan Koslow's (collectively Plaintiffs) civil conspiracy claim. Doc. 119.[1] The Court must decide whether Plaintiffs' settlement and voluntary dismissal of all claims against all defendants except the Vianet parties renders the civil conspiracy claim against Vianet futile. For the following reasons, Vianet's Motion for Judgment on the Pleadings is DENIED.[2]

---

[1]Although the Vianet parties filed the Original Complaint in this Court (and thus were positioned as the plaintiffs), the Court realigned the parties on October 3, 2016 (Doc. 135), such that the Vianet parties are now listed as the defendants, and Tap Acquisition, Inc. and Evan Koslow are now listed as the plaintiffs. This opinion, including in citations, refers to the parties by their current designations.

[2]Vianet's Motion for Judgment on the Pleadings, filed April 20, 2016, also included a request to expedite briefing on the motion to due a then-impending trial setting of May 9, 2016. However, because the trial date was resent and briefing on the motion is now complete, Vianet's request for expedited briefing is denied as moot.

I.

BACKGROUND

This case primarily involves a series of disputes between two players in the beverage analytics industry after discussions of a merger/acquisition between the companies fell through. Although the Court has described the facts of the underlying dispute in previous orders (*see* Docs. 38, 129), it does so again here to the extent necessary to decide the motion for judgment on the pleadings on Plaintiffs' civil conspiracy claim.

A.    *Factual Summary*[3]

Vianet Group PLC is a corporation organized and existing under the laws of the United Kingdom, and Vianet Americas, Inc. is its United States subsidiary. Doc. 58, Pls.' 2nd Am. Answer ¶¶ 24–25; Doc. 1, Defs.' Original Compl. ¶¶ 1–2. Before declaring bankruptcy in 2012, Tap Acquisition, Inc. (Tap) was a Texas corporation providing "beverage management and data analytics solutions to the restaurant industry." Doc. 58, Pls.' 2nd Am. Answer ¶ 32. Tap's services were designed to identify specific causes of draught beer loss and help restaurants recover lost revenue due to over-pouring, waste, and theft. *Id.*

After investing in Tap's predecessor (TapDynamics), Dr. Evan Koslow took over Tap in 2010. *Id.* ¶¶ 43–49. Dr. Koslow hired Ross Mandel to serve as CEO of the newly formed Tap, and Mandel hired Robert Fenley, Mohammed Rizvi, and Jason Gould. *Id.* ¶¶ 50–51. According to

---

[3]Vianet's motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss for failure to state a claim. *Lucky v. Haynes*, No. 3:12-CV-2609-B, 2013 WL 3796911, at *3 (N.D. Tex. July 22, 2013). Therefore, this factual summary is drawn from Plaintiffs' Second Amended Answer, Counterclaim, and Third-Party Complaint (Doc. 58), which functions as a complaint in light of the parties' realignment.

Plaintiffs, Mandel, Fenley, Rizvi, and Gould all signed employment agreements containing confidentiality, non-disclosure, and non-solicitation provisions upon being hired. *Id.* ¶ 51.

In late 2011, Tap—through its CEO, Mandel—entered into discussions with Vianet to explore options including a merger, acquisition, or combination sale of both companies to a third party. *Id.* ¶ 52. In connection with these discussions, the companies signed a confidentiality agreement, pursuant to which Tap shared extensive information with Vianet concerning Tap's operations, finances, customer base, systems, and technology. *Id.*

In May 2012, Dr. Koslow fired Mandel. *Id.* ¶ 55. According to Plaintiffs, however, Mandel continued communicating with Vianet after his termination regarding the possible purchase of Tap by Vianet. *Id.* ¶ 57. Plaintiffs further allege that Mandel and Vianet conspired with Fenley, Rizvi, and Gould to divert customers away from Tap to Vianet. *Id.* ¶¶ 56–65. In September 2012, Fenley, Rizvi, and Gould all resigned from Tap on the same day, taking their customer files, business records, and computers with them. *Id.* ¶¶ 57–58. This exodus allegedly caused interruptions in services to Tap's customers, eventually forcing Tap to declare bankruptcy in October 2012. *Id.* ¶¶ 65–66. Vianet then formed Vianet Americas, Inc.—which eventually hired Fenley, Rizvi, and Gould—to handle the new business from Tap's former customers. *Id.* ¶ 65.

B.   *Procedural History*

Tap's litigation rights were assigned in bankruptcy to the Koslow Technologies Corporation Charitable Remainder Trust, which owned the stock of Tap Acquisition, Inc., and of which Dr. Evan Koslow is the trustee. *Id.* ¶ 66. Subsequently, Plaintiffs brought suit in Texas state court against the

Vianet parties and five individual defendants in August 2014.[4] Doc. 19, Joint Status Report 2 [hereinafter JSR].

Vianet responded to the state court action by filing its Original Complaint in this Court against Tap for breach of contract and attorney's fees, arguing that the confidentiality agreement signed by Vianet and Tap required any dispute between them not involving securities laws to be litigated in federal court. Doc. 1, Defs.' Original Compl. 1. Plaintiffs answered in federal court and filed counterclaims against Vianet for: (1) breach of the confidentiality agreement; (2) misappropriation of trade secrets; (3) civil theft; (4) tortious interference with contracts; (5) tortious interference with prospective business relationships; and (6) civil conspiracy. Doc. 5, Pls.' Answer ¶¶ 69–95. Plaintiffs' Answer also included a Third-Party Complaint against Mandel, Fenley, Rizvi, Gould, and Law for: (1) breach of the employment agreements; (2) misappropriation of trade secrets; (3) civil theft; (4) breach of fiduciary duty; (5) tortious interference with contracts; (6) tortious interference with prospective business relationships; and (7) civil conspiracy. *Id.* After Plaintiffs filed their Answer, Counterclaim, and Third-Party Complaint in federal court, the state court proceeding was abated.[5] Doc. 19, JSR 1–2.

After Plaintiffs' claims against third-party defendant James Law were dismissed, Plaintiffs filed

---

[4]The five individuals were Manley, Fenley, Rizvi, Gould, and James Law. Law is another former employee of Tap also originally alleged by Plaintiffs to have conspired with Vianet, Mandel, Fenley, Rizvi, and Gould. Plaintiffs settled all claims against Law, and he was dismissed as a party in September 2015. *See* Doc. 54. Plaintiffs' Second Amended Answer, Counterclaim, and Third-Party Complaint (Doc. 58) removes any reference to Law.

[5]Plaintiffs' claims in the state court action were identical to those later brought as counterclaims and third-party claims in this Court. *See* Doc. 83, App. Supp. Defs.' Resp. to Pls.' Mot. Summ. J., Ex. 1, Plaintiff's Original Petition.

a Second Amended Answer, Counterclaim, and Third-Party Complaint removing any reference to Law, which is now the live pleading in this case. Doc. 58, Pls.' 2d Am. Answer. The Vianet parties answered Plaintiffs' Second Amended Counterclaim on October 19, 2015 (Doc. 60, Defs.' 2nd Am. Answer), and the four remaining individual defendants answered on October 23, 2015 (Doc. 61, 3d Party Defs.' 2d Am. Answer).

In February 2016, the parties filed three summary judgment motions: (1) Plaintiffs' motion for summary judgment on all of Vianet's claims and affirmative defenses (Doc. 72); (2) the four remaining individual defendants' motion for summary judgment on all of Plaintiffs' third-party claims against them (Doc. 75); and (3) Vianet's motion for summary judgment on all of Plaintiffs' counterclaims against it (Doc. 78). While the summary judgment motions were pending, Plaintiffs filed an Agreed Motion to Dismiss all claims against the remaining four individual defendants (Doc. 102), which the Court granted on March 24, 2016 (Doc. 104), thus rendering the individual defendants' motion for summary judgment moot and leaving only the two Vianet parties as defendants.[6]

Following the dismissal of the individual defendants, Vianet moved for judgment on the pleadings with respect to Plaintiffs' counterclaim for civil conspiracy (Doc. 119), arguing that because the Vianet parties—as parent and subsidiary—cannot conspire with each other, Plaintiffs' live pleading no longer states a claim upon which relief may be granted for the civil conspiracy claim. Plaintiffs responded on April 25, 2016 (Doc. 124), and Vianet replied on May 9, 2016 (Doc. 127). Therefore, Vianet's motion for judgment on the pleadings is now ripe for review.

---

[6]The Vianet parties were, of course, technically plaintiffs at that point, as the parties had not yet been realigned.

II.

LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Id.*

Federal Rule of Civil Procedure 8(a) sets forth the pleadings requirements in federal cases. It states that pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose is to put the defendant on fair notice of what the claim is and upon what grounds it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleader's bare averment that he wants relief and is entitled to it does not suffice. *Twombly*, 550 U.S. at 555 n.3.

To survive a motion for judgment on the pleadings, "the plaintiff must plead 'enough facts to state a claim that is plausible on its face.'" *Guidry*, 512 F.3d at 180 (quoting *Twombly*, 550 U.S. at 547). The factual allegations in the complaint must be enough to raise a right to relief above the speculative level. *Id.* The court should assume that all the factual allegations in the complaint are true, even if doubtful in fact. *Id.* The ultimate question in Rule 12(b)(6) and Rule 12(c) motions is

whether the complaint states a valid claim for relief when it is viewed in the light most favorable to the plaintiff. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

III.

ANALYSIS

In its motion for judgment on the pleadings, Vianet makes two arguments for why Plaintiffs' claim for civil conspiracy must fail. First, it argues that the only two remaining defendants—Vianet Group PLC and Vianet Americas, Inc.—as parent and wholly owned subsidiary cannot conspire with one another as a matter of law. Doc. 119, Defs.' Mot. for J. on Pleadings 3 n.9 [hereinafter Defs.' Mot.]. Second, Vianet contends that the conspiracy claim fails because Plaintiffs voluntarily dismissed the individual defendants with whom Vianet allegedly conspired. Doc. 119, Defs.' Mot. 4–6.

Under Texas law, a claim for civil conspiracy require the plaintiff to prove the following elements: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). In Texas, as in most jurisdictions, civil conspiracy is not an independent cause of action. *See Arthure W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 669, 709–10 (5th Cir. 2009) (citing *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 381 (Tex. App.—Houston [1st Dist.] 2007, no pet.)). Rather, it is a "derivative tort," and as such, "a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). Conversely, if the underlying tort fails, there can be no

- 7 -

claim for conspiracy related to that failed tort. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 582 (Tex. 2001).

A.      *The Intracorporate Conspiracy Doctrine*

Vianet's first argument relies on what is often termed the intracorporate conspiracy doctrine, which provides generally that a corporation cannot conspire with itself. *See Collins v. Bauer*, No. 3:11-CV-0887-B, 2012 WL 443010, at *6–9 (N.D. Tex. Jan. 23, 2012) (citing *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952)). While there is some disagreement among Texas courts of appeals as to whether the intracorporate conspiracy doctrine extends to Texas common law conspiracy claims, another court in this district, noting the conflict and predicting how the Texas Supreme Court would rule, held that under Texas law a parent corporation cannot conspire with its fully owned subsidiary. *Block v. Alpharma, Inc.*, No. 3:02-CV-1077, 2004 WL 555482, at *2–3 (N.D. Tex. Mar. 17, 2004) (Godbey, J.); *but see ASARCO LLC v. Ams. Min. Corp.*, 382 B.R. 49, 78 (S.D. Tex. 2007) (disagreeing with *Block v. Alpharma* "at least in the face of allegations of bad faith or fraud being committed on third parties" which were present in that case).

In the present case, however, that determination is unnecessary because Plaintiffs do not allege a conspiracy between Vianet Group PLC and Vianet Americas, Inc. Rather, it is clear from Plaintiffs' first counterclaim (Doc. 5), first amended counterclaim (Doc. 16), and second amended counterclaim (Doc. 58) that Plaintiffs have all along alleged a conspiracy between Vianet and the five individual defendants, not between the two Vianet parties. For example, Plaintiffs allege that the resignations of Fenley, Rizvi, and Gould were "calculated, having been the object of deliberate planning with Vianet and Mandel." Doc. 58, Pls.' 2d Am. Answer ¶ 57. Plaintiffs also allege that

Fenley, Rizvi, and Gould "had been in active communications with Vianet, and had agreed to steer Tap Acquisitions' [sic] customers to Vianet in exchange for promises of employment." *Id.*

According to Plaintiffs, Vianet Americas, Inc. was not incorporated until October 2012, almost a month after Fenley, Rizvi, and Gould resigned from Tap. *Id.* ¶ 65. Thus, the conspiracy alleged in Plaintiffs' counterclaims took place predominantly between Vianet Group PLC and the individual defendants before Vianet Americas, Inc. even came into existence. Also noteworthy is the reference throughout Plaintiffs' pleadings to the conduct of "Vianet" and "Vianet and/or Vianet Americas" rather than to the conduct of either of the Vianet entities individually. *See, e.g.*, *id.* ¶¶ 34, 36, 52–54, 56–57, 63, 65.

Perhaps even more telling, Plaintiffs do not even attempt to respond to the intracorporate conspiracy issue in their Response, but instead devote their full attention to Vianet's second argument. Therefore, assuming without deciding that the intracorporate conspiracy doctrine does apply to civil conspiracy claims in Texas (thus barring the possibility of the Vianet parties conspiring with each other), if Plaintiffs have adequately alleged a conspiracy claim at all, it could only be for a conspiracy between the Vianet parties collectively and the now-dismissed individual defendants. Thus, the Court turns to Vianet's second argument: that Plaintiffs' voluntary dismissal of all of its claims against the individual defendants necessarily negates the civil conspiracy claim against Vianet.

B.      *Dismissal of the Individual Defendants*

In its Motion, Vianet relies heavily on a Texas court of appeals case for the argument that Plaintiffs' dismissal of all the underlying tort claims against the individual defendants naturally defeats the civil conspiracy claim against Vianet. In *West Fork Advisors, LLC v. SunGuard Consulting*

*Servs., LLC*, the plaintiff, West Fork, sued a software developer, SunGuard, for misappropriation of trade secrets, conversion, unfair competition, and breach of fiduciary duty. 437 S.W.3d 917, 919 (Tex. App.—Dallas 2014, pet. denied). In its pleadings, West Fork also alleged that two additional parties not named in the suit had conspired with SunGuard in the commission of the underlying torts. *Id.* The two unnamed parties had previously been sued by West Fork in another case, but that previous suit was settled prior to West Fork's filing of the suit against SunGuard. *Id.*

Later, in the suit against SunGuard, the trial court granted summary judgment for SunGuard on all of West Fork's claims. *Id.* West Fork appealed only the grant of summary judgment on the conspiracy claim, but not the grant of summary judgment on any of the underlying tort claims. *Id.* at 920. The court of appeals, in reviewing the grant of summary judgment on West Fork's conspiracy claim, noted the following:

> There are a number of ways the viability of a conspiracy claim can be defeated by the claimant's failure to establish an underlying tort. The trial court may correctly grant summary judgment against the claimant on the underlying tort. The claimant may fail to plead the underlying tort on which he relies. Or the tort that the claimant does plead may not legally exist. Regardless of the reason for the failure of the underlying tort, there can be no independent liability for civil conspiracy.
>
> In this case, West Fork has not challenged the trial court's dismissal of its [underlying tort claims against SunGuard]. And although West Fork alleged below that [the two parties from the previous suit] had committed misappropriation of trade secrets, conversion, unfair competition, and breach of fiduciary duties, West Fork did not join either of those parties as defendants in this case so that their purported liability could be adjudged by the trial court. Accordingly, West Fork is unable to establish that any named defendant is liable for an underlying tort. In the absence of such liability, West Fork's conspiracy claim must fail.

*Id.* at 920–21 (internal citations and footnotes omitted). Quoting this language from *West Fork*, Vianet argues that because Plaintiffs dismissed the underlying tort claims against the individual

defendants, the individual defendants' liability also "cannot be adjudicated on the torts brought against them." Doc. 119, Defs.' Mot. 6. Therefore, Vianet reasons, since it cannot conspire with itself, "the conspiracy claim cannot be based upon the causes of action for misappropriation, civil theft, and tortious interference which [Plaintiffs] continue[ ] to assert against [Vianet]." *Id.*

Plaintiffs respond by noting that the settlement in *West Fork* was in an entirely different proceeding and that the individual defendants in the present suit actually were "named defendants" at one point. Doc. 127, Pls.' Resp. to Defs.' Mot. ¶¶ 4–5 [hereinafter Pls.' Resp.]. Additionally, acknowledging they could find no Texas cases involving dismissal of a conspiracy claim after settlement with a named defendant, Plaintiffs point to a Federal Circuit case seemingly on point. In *Boynton v. Headwaters, Inc.*, the plaintiffs were investors in a company run by the defendant, James Davidson. 243 F. App'x 610, 612 (Fed. Cir. 2007). The investors alleged that Davidson had engaged in a scheme to defraud them by secretly negotiating to sell the company to Headwaters, Inc. *Id.* at 612–13. Plaintiffs sued both Davidson and Headwaters for various torts, including fraud, civil conspiracy, breach of constructive trust, breach of fiduciary duty, conversion, and interference with contract. *Id.* The investors eventually settled with Davidson, after which the district court granted summary judgment on the investors' conspiracy claim against Headwaters, finding that "the civil conspiracy claim could not stand because there was no longer an underlying predicate act, since the tort claims [sic] Mr. Davidson had been dismissed." *Id.* at 614.

The Federal Circuit, however, reversed the district court, stating that "the district court erred in equating the procedural consequences of the dismissal of the claims against Mr. Davidson with whether plaintiffs, at a trial against Headwaters, could establish an actionable underlying substantive

- 11 -

fraud claim against Mr. Davidson." *Id.* at 615. The court further noted that "the underlying alleged fraud committed by Mr. Davidson exists as an underlying tort to the civil conspiracy claim against Headwaters." *Id.* at 616.

In its Reply, Vianet re-urges its reliance on *West Fork* and dismisses the Federal Circuit case as applying Tennessee rather than Texas civil conspiracy law. Doc. 127, Defs.' Reply to Pls.' Resp. 3 [hereinafter Defs.' Reply]. Vianet also argues that Plaintiffs' distinction between *West Fork*, in which the alleged coconspirator settled pre-filing, and *Boynton*, in which the alleged coconspirators settled with the plaintiffs after being named as defendants in the present suit, is a "distinction without a difference." *Id.*

The Court, however, finds *Boynton* persuasive and not in conflict with the Texas court of appeals' holding in *West Fork*. In *West Fork*, the lower court granted summary judgment on all of the underlying tort claims, which the plaintiff did not appeal. *West Fork*, 437 S.W.3d at 920. Thus, after summary judgment, there existed no underlying tort to which the derivative tort of conspiracy could apply. That the court also noted no underlying tort claims pending against the two unnamed coconspirators—which goes without saying as they were not parties in the suit and thus could not have claims pending against them—simply reinforces the Texas rule that conspiracy is a derivative tort that requires some underlying tort for the conspiracy claim to survive. Vianet contends that West Fork's conspiracy claim failed because there were no underlying tort claims against the two unnamed conspirators; however, the *West Fork* court makes clear that the conspiracy claim failed because there were no underlying tort claims left at all. *Id.* at 920–21. The court specifically noted that West Fork had not challenged the trial court's dismissal of its claims against SunGuard for the

underlying torts. *Id.* at 920. Had one of West Fork's underlying tort claims against SunGuard survived summary judgment along with the conspiracy claim—or had West Fork successfully challenged the grant of summary judgment for one of the underlying torts on appeal—the court may have held differently.

Similar to *Boynton*—and in contrast to *West Fork*—the five individual defendants in the present case actually were named in Plaintiffs' third-party complaint. And, again similar to *Boynton* and in contrast to *West Fork*, there remains an underlying tort claim pending against a named defendant after dismissal of the individual defendants. In *Boynton*, that named defendant was Headwaters, Inc. In the present case, the named defendant against which an underlying tort claim remains pending is Vianet. As the Federal Circuit noted of the lower court in *Boynton*, Vianet appears to have erred in equating the procedural consequences of the dismissal of the claims against the individual defendants with the issue of whether Plaintiffs, at a trial against Vianet, could establish an actionable underlying tort claim against the dismissed individual defendants to support the claim for conspiracy against Vianet.

In its Reply, Vianet argues that *Boynton* applies Tennessee civil conspiracy law rather than Texas law, but it fails to establish why the result would be any different under Texas conspiracy law. Additionally, since Vianet filed this motion for judgment on the pleadings in April 2016, the issues for trial have been narrowed considerably by summary judgment. After this Court's August 16, 2016 Memorandum Opinion and Order addressing both sides' summary judgment motions (Doc. 129), the following claims by Plaintiffs against Vianet survive for trial: (1) some aspects of the breach of

contract claim; (2) the misappropriation of trade secrets claim; and (3) the claim for civil conspiracy.[7]

Therefore, even after summary judgment, there remains an underlying tort claim for which Plaintiffs seek to hold at least one named defendant—Vianet—liable. Because there remains a viable tort claim against a named defendant upon which Plaintiffs base their claim for the derivative tort of civil conspiracy, Plaintiffs have alleged a claim upon which relief may be granted and judgment on the pleadings is not appropriate.

IV.

CONCLUSION

For the reasons stated above, Vianet's motion for judgment on the pleadings on Plaintiffs' civil conspiracy claim is DENIED.

SO ORDERED.

SIGNED: October 14, 2016.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

[7]Plaintiffs claims against Vianet for civil theft, tortious interference with prospective business relationships, and some aspects of the breach of contract claim were dismissed by this Court on August 16, 2016. *See* Doc. 129. Additionally, Plaintiffs decided not to pursue their claim for tortious interference with contracts. *See* Doc. 89, Pls.' Br. Supp. Resp. to Defs.' Mot. Summ. J. ¶¶ 92–93; Doc. 129, Mem. Op. & Order 26 n.11.